No. 24-3156

-----

IN THE
UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

-----

PAWNEET ABRAMOWSKI, ET AL., Appellants

v.

NUVEI CORPORATION, ET AL., Appellees

-----

On Appeal from the United States District Court
for the District of Delaware
Civil Action No. 1:23-cv-00965-GBW

-----

**REPLY BRIEF FOR APPELLANTS**

-----

Javier Bleichmar
BLEICHMAR FONTI & AULD LLP
300 Park Ave, Suite 1301
New York, New York 10022
Tel: (212) 789-1340
jbleichmar@bfalaw.com

Derrick B. Farrell
BLEICHMAR FONTI & AULD LLP
3411 Silverside Rd.
Baynard Building, Ste. 104
Wilmington, DE 19810
Tel: (302) 499-2158
dfarrell@bfalaw.com

*Counsel for Appellants*

# **TABLE OF CONTENTS**

SUMMARY OF ARGUMENT ...............................................................1

ARGUMENT .....................................................................................5

I. The Plain Language of the Best Price Rule Does Not Allow Defendants to Pay Some Tendering Stockholders Nothing..................5

II. Private Contracts Like the SA and Letter of Transmittal Cannot Circumvent the Best Price Rule's Requirements ..................................8

    A. The Merger Agreement Further Prevents Defendants from Avoiding the Best Price Rule's Requirements ........................11

III. Plaintiffs Validly Tendered Their Company Common Stock.............14

IV. Any Forfeiture After the Expiration of the Tender Offer is Irrelevant to Defendants' Obligation to Pay for All Tendered Shares ...............................................................................17

V. The Best Price Rule Is Valid and Provides a Private Right of Action .................................................................................19

    A. Congress Authorized the SEC to Promulgate the Best Price Rule in the Williams Act....................................................20

    B. Long-Standing Caselaw Establishes that the Best Price Rule Provides for a Private Right of Action.....................................23

CONCLUSION ................................................................................25

CERTIFICATE OF COMPLIANCE.....................................................27

CERTIFICATE OF SERVICE .............................................................28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Epstein v. MCA, Inc.*,
  50 F.3d 644 (9th Cir. 1995), *rev'd on other grounds*, 516 U.S. 367
  (1996) ................................................................................................10, 11, 23

*Facta Health Inc. v. Pharmadent LLC*,
  No. 23-2224, 2024 WL 4345299 (3d Cir. Sept. 30, 2024) ..................................19

*Field v. Trump*,
  850 F.2d 938 (2d Cir. 1988) ..........................................................................23, 24

*G2A.COM Sp. z.o.o. (Ltd.) v. U.S.*,
  789 F. App'x 296 (3d Cir. 2019) ........................................................................19

*Highlands Ins. Grp., Inc. v. Halliburton Co.*,
  No. 17971, 2001 WL 287485 (Del. Ch. Mar. 21, 2001), *aff'd*, 801
  A.2d 10 (Del. 2002) ............................................................................................12

*In re Ins. Brokerage Antitrust Litig.*,
  579 F.3d 241 (3d Cir. 2009) ..............................................................................19

*Interim Capital LLC v. Herr Law Group, Ltd.*,
  2011 WL 7047062 (D. Nev. Oct. 21, 2011) ........................................................6

*J.I. Case Co. v. Borak*,
  377 U.S. 426 (1964) ......................................................................................24, 25

*John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*,
  119 F.3d 1070 (3d Cir. 1997) ............................................................................19

*In re Kaiser Aluminum Corp.*,
  456 F.3d 328 (3d Cir. 2006) ................................................................................8

*Loper Bright Enters. v. Raimondo*,
  603 U.S. 369 (2024) ......................................................................................20, 22

*PA. Dep't of Env't Prot. v. Trainer Custom Chem., LLC*,
  906 F.3d 85 (3d Cir. 2018) ................................................................................10

*Piper v. Chris–Craft Indus., Inc.*,
  430 U.S. 1 (1977)............................................................................24

*Schreiber v. Burlington Northern, Inc.*,
  472 U.S. 1 (1985)............................................................................22

*SI Mgmt. L.P. v. Wininger*,
  707 A.2d 37 (Del. 1998) .................................................................13

*In re WHX, Exchange Act Release No. 47980*,
  2003 WL 21283081 (June 4, 2003), *overruled on other grounds by*
  *WHX Corp. v. SEC*, 362 F.3d 854 (D.C. Cir. 2004)..........................15

*Ziglar v. Abbasi*,
  582 U.S. 120 (2017).........................................................................24

**Statutes**

15 U.S.C. § 78n(a)(1)..........................................................................21

15 U.S.C. § 78n(d)(7)..........................................................................21

**Regulations**

17 C.F.R. § 240.14d-10(a) ................................................................1, 5

17 C.F.R. § 240.14d-10(a)(2).......................................................2, 5, 17

17 C.F.R. § 240.14d-10(c) ....................................................................7

17 C.F.R. § 240.14d-10(d) ....................................................................9

**Other Authorities**

70 FR 76116-01, 2005 WL 3487289 (Dec. 22, 2005)..........................10

Tender Offer Rules and Schedules, Questions and Answers of General
  Applicability, Question 101.12, U.S. Securities Exchange
  Commissions, *available at* https://www.sec.gov/rules-
  regulations/staff-guidance/compliance-disclosure-
  interpretations/tender-offer-rules-schedules (last visited May 12,
  2025) ..............................................................................................15

## SUMMARY OF ARGUMENT[1]

Defendants seek to rewrite the Best Price Rule.  Defendants contend that despite purporting to offer to purchase "any and all of the issued and outstanding shares of common stock"[2] for $9.75 per share,[3] they do not have to "actually" pay Plaintiffs the "highest consideration paid to any other security holder for securities tendered in the tender offer"[4] because they "actually" paid Plaintiffs nothing.  The Best Price Rule, however, does not include the word "actually."  The District Court needed to add the word "actually" to the Best Price Rule's plain text because otherwise paying some common stockholders $9.75 per share and Plaintiffs nothing directly contradicts the Best Price Rule's plain language.

---

[1] All capitalized terms not defined herein have the meanings assigned in the Amended Complaint JA294-334 (D.I. 9), and/or the Table of Terms provided in the Opening Brief for Appellants ("Br.") (Document 20-1 at 5).  All emphasis is added and citations are omitted unless otherwise noted.  Citations to "Opp." are to the Brief for Defendants-Appellees (Document 26), to "JA###" are to the pages of the Joint Appendix, and to "¶_" are to the paragraphs of the Amended Complaint.

[2] JA211 (D.I. 1-4 at 1).

[3] Defendants argued below that they did not have an obligation to hold the Offer open to Plaintiffs under the All Holders Rule because Plaintiffs shares were of a different "class" as that term is used in the Williams Act, due to the restrictions on the shares.  If Defendants truly believed that was the case, however, they could have excluded Plaintiffs' Company Common Stock from the tender offer, and if correct about the All Holders Rule, would not have a problem under the Best Price Rule.  Defendants, however, *chose* to make the Offer open to "any and all" common stock, including Plaintiffs' Company Common Stock.

[4] 17 C.F.R. § 240.14d-10(a).

The plain language of the Best Price Rule, its complete context, and its legislative and regulatory history, all confirm that the Best Price Rule means exactly what it says—"[t]he consideration paid to any security holder for securities tendered in the tender offer is the highest consideration paid to any other security holder for securities tendered in the tender offer." 17 C.F.R. § 240.14d-10(a)(2). Here, the highest price paid was $9.75 per share. Defendants must pay $9.75 per share to all stockholders they made the offer open to, including Plaintiffs.

Unable to refute the Best Price Rule's plain language and Congress's and the SEC's intent behind it, Defendants rely on the contractual terms of the SA and a standard form Letter of Transmittal to excuse their failure to pay Plaintiffs as required by the Best Price Rule. But the Best Price Rule does not contain an exception that applies to Plaintiffs' Company Common Stock. When asked if a tender offer could exclude restricted shares, like Plaintiffs, the SEC explained that the Best Price Rule obligated a buyer to "accept[] the shares subject to such restrictions." (JA327 (¶106).) The only exception to the Best Price Rule courts have recognized is for contractual restrictions placed on shares after issuance, such as employment contracts or pledging shares as debt. Here, Plaintiffs' Company Common Stock had the restrictions listed on the stock certificates at issuance. Before the District Court's ruling in this case, no Court had ever held that shares fell

outside the Best Price Rule because they were restricted shares. Defendants cannot contract around the Best Price Rule. If they could, it would be a toothless law.

Nor can Defendants rely on contracts to refuse to accept Plaintiffs' valid tenders as required by the plain language of the Best Price Rule. Defendants cannot point to anything in the Merger Agreement itself that excludes Plaintiffs' Company Common Stock from the merger. Instead, they rely on a form Letter of Transmittal not even attached to the Merger Agreement and agreed to at a later date, that requires that any tenderer represent that the buyer "will acquire good and unencumbered title to such Shares (and such Distributions), free and clear of all liens, restrictions, charges and encumbrances and the same will not be subject to any adverse claims." This means that a tenderor cannot encumber the shares after issuance, by for example, selling some rights associated with the shares. It does not exlcude shares that were restricted shares subject to certain limitations since issuance.

Consistent with Plaintiffs' reading of the Letter of Transmittal, some form letters of transmittal, which Defendants could have selected, do not even include the word "restrictions," which is the sole basis for Defendants' reading of the Letter of Transmittal to exclude Plaintiffs' Company Common Stock. To the extent the Letter of Transmittal is ambiguous, this Court should resolve any ambiguities against the drafter, here Defendants. In any event, Defendants waived the transfer restrictions

under the SA by pursuing the tender offer and soliciting Plaintiffs' tenders despite the restrictions on the shares.

Any purported forfeiture of Plaintiffs' Company Common Stock is also irrelevant to Defendants' obligation to pay under the Best Price Rule. The District Court found that forfeiture occurred *after* the tender offer expired. The plain language of the Best Price Rule requires that Defendants pay the highest consideration "to any security holder for securities *tendered* in the tender offer." Here Plaintiffs tendered their shares. The Best Price Rule's plain language required payment regardless of whether Defendants chose to accept them at a later date. Defendants recognized this fact in making the offer which stated that Defendants would "irrevocably accept for *payment* all shares . . . validly tendered . . . [prior to] the Offer Expiration Time." (JA503 (D.I. 21-1 § 2.1(d)).) Meaning, when the offer expired, Defendants irrevocably accepted the shares for "payment" purposes, but did not yet own them until they accepted the tenders at a later date. Accordingly, because the parties agree that Plaintiffs tendered prior to any forfeiture and the Best Price Rule requires payment to all that tendered, Defendants must pay for Plaintiffs' tenders.

Finally, left with no other avenue to avoid the Rule's requirements, Defendants claim the Best Price Rule exceeds the SEC's rule-making authority and that the Rule does not provide for a private right of action. But Congress plainly

authorized the SEC to promulgate the Best Price rule by including its statutory equivalent in the Williams Act wherein it also plainly granted the SEC the authority to promulgate rules regarding tender offers to effect the Act's purposes. Every Circuit Court to address this issue has concluded that the stockholders the Best Price Rule is meant to protect have a private right of action to enforce it. Tellingly, Defendants cite no court that has held otherwise.

## ARGUMENT

### I.    The Plain Language of the Best Price Rule Does Not Allow Defendants to Pay Some Tendering Stockholders Nothing

The Best Price Rule plainly states that a buyer must pay all tendering shareholders the highest consideration paid to any other:

> No bidder shall make a tender offer unless: . . . The consideration paid to any security holder for securities tendered in the tender offer is the highest consideration paid to any other security holder for securities tendered in the tender offer.

17 C.F.R. § 240.14d-10(a), (a)(2).

Defendants and the District Court insert the word "actually" to modify the Rule to read "consideration [actually] paid." (Opp. at 16-17.) Nonetheless, Defendants claim that "[t]he District Court's decision is firmly grounded in the Rule's plain language, which applies only to shares for which there is 'consideration paid.'" (Opp. at 3.) Not so. The Rule requires that the consideration paid to any securities tendered is the highest consideration paid to anyone else. Paying no consideration is not the highest consideration and the word "actually" does not

appear in the Rule.  Indeed, nothing in the plain language of the Best Price Rule indicates that a buyer may avoid its requirements by paying some shareholders nothing, like Defendants' failure to pay Plaintiffs even a single penny for their tendered Company Common Stock, while actually paying other tendering shareholders.  Nor does it make any sense that the rule would distinguish between stockholders that received a penny and those that received nothing, and Defendants identify no rational basis in policy for the distinction either.

Defendants do not cite any case that supports their position.  In *Interim Capital LLC v. Herr Law Group, Ltd*., 2011 WL 7047062 (D. Nev. Oct. 21, 2011), the court held that a Nevada statue with the same "consideration paid" language in a provision identifying the amount the lienholder could recover from a debtor did not bar recovery for a lienholder who had inherited that lien, rather than making payment for it.  *Id.* at \*8-9; *see* Br. at 17.  Defendants respond that "[t]he interpretation of a Nevada statute is irrelevant here" (Opp. at 20), but this ignores the fact that the Nevada statute and the Best Price Rule share the same language, and the court in *Interim Capital* rejected the same "consideration actually paid" argument Defendants make here.

Likewise, Defendants do not address Plaintiffs' argument that the Rule, specifically acknowledges that even where a buyer offers two types of consideration, the buyer must still pay all tendering stockholders the highest price of either type.

Paying nothing is a different type of consideration. The Best Price Rule provides that a bidder may offer "more than one type of consideration in a tender offer," only if "[t]he highest consideration of each type paid to any security holder *is paid* to any other security holder receiving that type of consideration." 17 C.F.R. § 240.14d-10(c), (c)(2); *see also* Br. at 17-18.

Ironically, though Defendants acknowledge that "the Rule is intended to ensure equal treatment to holders of shares subject to a tender offer and prevent discrimination among shareholders," (Opp. at 18), they ignore the SEC's clear mandate in initially promulgating the Rule, *i.e.*, "to make explicit the requirement that issuers and bidders *must pay* to any security holder *who tenders* pursuant to the tender offer the highest consideration paid to any other security holder *during the tender offer*." SEC Release No. 6619, 1986 WL 703868, at *6 (Jan. 14, 1986). Tellingly, Defendants do not address the extensive legislative and regulatory history cited in Plaintiffs' opening brief, which all indicates that the Best Price Rule is not intended to allow paying some tendering shareholders while failing to pay others. (*See* Br. at 18-20.)

Like the District Court, Defendants do not explain how the plain language of the Best Price Rule indicates that the Rule does not apply where an offeror pays a tendering stockholder nothing, but pays something to other tendering stockholders. To accept the District Court's and Defendants' interpretation ignores the "basic

principle of statutory construction" that courts "should avoid a statutory interpretation that leads to absurd results." *In re Kaiser Aluminum Corp.*, 456 F.3d 328, 330 (3d Cir. 2006).  The plain reading of the District Court's opinion leads to just such a result.  By the District Court's reasoning, the Best Price Rule would provide no recourse to shareholders who were paid nothing, simply by way of the buyer paying them $0 rather than $0.01 for their shares.  The District Court's interpretation, strictly applied, would render the Best Price Rule meaningless in such a situation, an absurd result not intended by Congress or the SEC.

## II.    Private Contracts Like the SA and Letter of Transmittal Cannot Circumvent the Best Price Rule's Requirements

Below, Defendants did not dispute that the Best Price Rule does not permit a buyer to simply contract around its requirements, (D.I. 22 at 18 n.14), nor did the District Court find that an offeror can circumvent the Best Price Rule by contract (JA015 (D.I. 28 at 14).)  Now, however, Defendants argue that the SA's contractual restrictions on Plaintiffs' Company Common Stock and the terms of the Letter of Transmittal meant that Defendants did not have to pay for Plaintiffs' tendered shares, and that the Best Price Rule allows for such contractual avoidance of the Rule's requirements.  But nothing in the Best Price Rule, the related SEC commentary, or the case law allows a buyer to evade the Best Price Rule's requirement through a private contract like the SA or Letter of Transmittal.  Rather, Defendants misread the regulatory history of the Rule and related caselaw to argue that the Best Price

Rule "was not intended to apply to preexisting agreements entered into by security holders." (Opp. at 18.)

In 2006, the SEC amended the Best Price Rule to carve out a single type of contract—employee compensation contracts—from the requirements of the Best Price Rule. Specifically, the amended rule made clear that the only exception to the Rule is to allow for "the negotiation, execution or amendment of an employment compensation, severance or other employee benefit arrangement," where the payment is for "compensation for past services performed, future services to be performed, or future services to be refrained from performing" and "[i]s not calculated based on the number of securities tendered or to be tendered in the tender offer by the security holder." 17 C.F.R. § 240.14d-10(d).

Defendants' selectively quote from SEC commentary accompanying the proposed amendments to the Best Price Rule to argue that the Best Price Rule broadly allows parties to contract around its requirements. But the SEC's commentary explains that the amendments only relate to employment contracts, and not any other contractual arrangement. The SEC explained that the amendments provide "a safe harbor for compensatory arrangements in third-party tender offers" which was:

> premised on the view that the best-price rule was not intended to apply to consideration paid pursuant to arrangements, including employment compensation, severance or other employee benefit arrangements, entered into by the bidder or the subject company with the employees

or directors of the subject company, so long as the consideration paid pursuant to such arrangements to persons that happen to be security holders was not to acquire their securities.

Amendments to the Tender Offer Best-Price Rule, 70 FR 76116-01, 2005 WL 3487289, at *76118 (Dec. 22, 2005).

The SA and Letter of Transmittal are not employment contracts excluded by the 2006 amendments to the Best Price Rule. Neither the 2006 amendments to the Best Price Rule nor the SEC's accompanying commentary refers to any other type of contractual arrangement that can alter the requirements of the Rule and Defendants cite none. "[W]here Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." *PA. Dep't of Env't Prot. v. Trainer Custom Chem., LLC*, 906 F.3d 85, 92 (3d Cir. 2018). Defendants cannot invent exceptions the Rule does not contain or even imply.

Defendants rely on *Epstein v. MCA, Inc.*, 50 F.3d 644 (9th Cir. 1995), *rev'd on other grounds*, 516 U.S. 367 (1996), for the proposition that the Best Price Rule "has no impact on transactions entered into or effected before, or after, a tender offer," like the SA. (Opp. at 18.) But *Epstein* is inapposite. Defendants take the Court's opinion out of context. In *Epstein*, the court held that a preferential transaction entered into by the buyer and a particular shareholder immediately prior to the commencement of a tender offer was part of the tender offer for purposes of

10

the Best Price Rule because that earlier transaction "was an integral part of the offer." 50 F.3d at 656.  The Court went on to explain that pursuant to this language, for example, "a bidder who purchases shares from a particular shareholder before a tender offer begins does not violate Rule 14d–10." *Id.*  *Epstein* does not address whether a party can contractually modify the Best Price Rule and does not hold a party can contract away the Best Price Rule as Defendants seek to do here.

### A.    The Merger Agreement Further Prevents Defendants from Avoiding the Best Price Rule's Requirements

The Merger Agreement also reflects that Defendants cannot contract around the requirements of the Best Price Rule.  Specifically, the Merger Agreement required the "Offer Documents," including the Letter of Transmittal to "comply in all material respects with the requirements of applicable Law," defined to include any "federal" "rule," including the Best Price Rule.  (JA504 (D.I. 21-1 § 2.1(f)), JA489 (D.I. 21-1 § 1.1(eee)).)  Defendants argue that that the Letter of Transmittal's purported requirements that Plaintiffs tender their Company Common Stock free of "restrictions" and warrant that Plaintiffs had the ability to transfer "any and all Distributions" associated with their Company Common Stock, override the Best Price Rule's requirements.  But Defendants' reading of the Letter of Transmittal to bar Plaintiffs' tenders of Company Common Stock that was subject to "restrictions" is impermissible as such an interpretation would violate the Best Price Rule as well as the terms of the Merger Agreement.  And with regard to the "Distributions" that

Defendants claim Plaintiffs could not transfer, those distributions were set aside by Paya pending the lifting of the restrictions, meaning Defendants acquired those funds when they completed the Merger.  (JA188 (D.I. 1-2 § 2.2(ii)(4)).)

Notably, the Letter of Transmittal is not a part of the Merger Agreement.  The Merger Agreement simply required that Defendants file the Offer along with the "form of the related letter of transmittal," each of which had to comply with the Best Price Rule.  (JA504 (D.I. 21-1 § 2.1(f)).)  The Merger Agreement included an integration clause that provides that the Merger Agreement "constitute[s] the entire agreement among the Parties with respect to the subject matter hereof," (*Id.* § 9.3 (JA563)), meaning the Letter of Transmittal, an extrinsic document, could not materially alter the terms of the Merger Agreement by barring Plaintiffs from tendering their Company Common Stock.  *See Highlands Ins. Grp., Inc. v. Halliburton Co.*, No. 17971, 2001 WL 287485, at *8 (Del. Ch. Mar. 21, 2001), *aff'd*, 801 A.2d 10 (Del. 2002) ("By entering into agreements with integration clauses, Halliburton stipulated that the contracts are the entire agreements between the parties and that there were no other agreements.").

The Merger Agreement only required a Letter of Transmittal in "customary form" and did not address restricted shares at all.  (JA510 (D.I. 21-1 § 2.8(b)).)  The Letter of Transmittal's language purportedly requiring tendered shares be free and clear of "restrictions" is not necessarily part of the "customary form" for such letters,

nor does it specifically refer to restricted shares, rather the plain language refers to restrictions placed on the shares after issuance.  It requires that a tenderor represent that the buyer "will acquire good and unencumbered title to such Shares (and such Distributions), free and clear of all liens, restrictions, charges and encumbrances and the same will not be subject to any adverse claims."  (JA445 (D.I. 13-1 at 4).) Plaintiffs correctly made that representation in connection with their tenders. Numerous recent tender offer transmittal letters do not include the "restrictions" language on which Defendants rely, further supporting the fact that the language refers to limitations placed on the shares after issuance, not restricted shares.[5]

Under established Delaware law, where, as here, a third-party stockholder is subject to a contract that it "had no hand in drafting . . . the principle of *contra proferentem* applies" and "ambiguous terms in the [a]greement should be construed against" the entity that negotiated them.  *SI Mgmt. L.P. v. Wininger*, 707 A.2d 37,

---

[5] *See* Letter of Transmittal re Shares in Fidelity Private Credit Fund, 1, *available at* https://www.sec.gov/Archives/edgar/data/1920453/000119312523202558/d508446 dex99a1iii.htm; *see also* Letter of Transmittal re Units in North Haven Private Income Fund LLC, 1 (same), *available at* https://www.sec.gov/Archives/edgar/data/ 1851322/000185132223000066/formofletteroftransmittala.htm;    Letter   of Transmittal re Shares in Grosvenor Registered Multi-Strategy Fund (TI 1), LLC, 2, (same),    *available   at*    https://www.sec.gov/Archives/edgar/data/1475457/ 000119312522085033/d287978dex99c.htm; Letter of Transmittal re Shares in Blackstone    Alternative    Alpha    Fund,    1    (same),    *available    at* https://www.sec.gov/Archives/edgar/data/1535091/000119312519080576/d618906 dex99a1iii.htm.

43 (Del. 1998).  To the extent the Court finds the Letter of Transmittal enforceable and finds its language referring to "restrictions" ambiguous, that term must be construed against Defendants.

## III.  Plaintiffs Validly Tendered Their Company Common Stock

Plaintiffs plainly alleged that they each accepted Defendants' offer by timely and validly tendering their shares of Company Common Stock.  JA300-311 (¶¶14-70), JA325 (¶98).  As discussed above, in choosing to pursue a tender offer, Defendants subjected themselves to the requirements of the Best Price Rule, around which they could not contract via the SA or Letter of Transmittal.  Thus, the SA's and Letter of Transmittal's contractual provisions cannot modify the requirements of the Best Price Rule to bar Plaintiffs from validly tendering their shares.  In all events, Defendants' remaining arguments that the SA and Letter of Transmittal specifically precluded Plaintiffs' valid tenders both fail.

First, that Paya issued Plaintiffs' Company Common Stock to Plaintiffs subject to certain restrictions pursuant to the SA does not free Defendants of their obligation to accept them in the tender offer under the Best Price Rule.  In July 1997, the Staff of the SEC stated that a "shareholder possessing restricted shares is not prohibited from tendering the shares pursuant to a tender offer merely because the shares are restricted," and the bidder must "accept[] the shares subject to such restrictions."  JA327 (¶106).  That remains the SEC's position today:  a buyer cannot

"exclude a security holder from participating in a tender offer because they hold restricted securities" because the All Holder Rule "requires a tender offer to be open to all security holders of the class of the securities subject to the tender offer."[6]

Defendants next contend that the Best Price Rule, permits exclusion of certain shares if "action[s] taken independently by an individual shareholder encumbers the shares and limits the shareholder's ability to participate in the offer," such as "shares that have been pledged as collateral for loans" or "held subject to a trust that prevents tender without the consent of the beneficiaries." (Opp. at 18-19 (citing *In re WHX, Exchange Act Release No. 47980*, 2003 WL 21283081, at *7 (June 4, 2003), *overruled on other grounds by WHX Corp. v. SEC*, 362 F.3d 854 (D.C. Cir. 2004)).) But Plaintiffs did not independently take any such action to encumber their shares after they were issued by Paya, as Paya and Plaintiffs together agreed that Paya would issue Plaintiffs' Company Common Stock with the restrictions set forth in the SA. (*See* JA187 (D.I. 1-2 § 2.1).) Thus, Plaintiffs' Company Common Stock is not ineligible for tender "for reasons outside of the control of the offeror," *WHX*, 2003 WL 21283081, at *7, because Defendants in fact waived any restrictions under the SA, by soliciting Plaintiffs' valid tender of Company Common Stock.

---

[6] *See* Tender Offer Rules and Schedules, Questions and Answers of General Applicability, Question 101.12, U.S. Securities Exchange Commissions, *available at* https://www.sec.gov/rules-regulations/staff-guidance/compliance-disclosure-interpretations/tender-offer-rules-schedules (last visited May 12, 2025).

Second, even if the SA could amend the Best Price Rule's requirements, Defendants waived any transfer restrictions under the SA by soliciting Plaintiffs' tenders of their Company Common Stock and choosing to complete the Merger by way of a tender offer instead of a stockholder vote and long-form merger. The SA specifically permits Plaintiffs to transfer their Company Common Stock in the event of a tender offer. (*See* JA189 (D.I. 1-2 § 2.2(iii) (allowing transfer to "Permitted Transferee[s] (as defined in the Letter Agreement)"); (JA203 (D.I. 1-3 § 3(d)) (defining "Permitted Transferees" to include tender offerors in a "stock exchange or other similar transaction which results in all of the company's stockholders having the right to exchange their shares of Common Stock for cash, securities or other property.").) And while the SA required Defendants to "agree[]in writing" to be subject to the SA to allow a transfer, no such writing was necessary because, by entering into the Merger Agreement—which made the Offer open for all Company Common Stock, including Plaintiffs' shares—with full knowledge of the terms of the publicly available SA, Defendants made the requisite agreement in writing.

Finally, Defendants' complaint that requiring them to accept and pay for Plaintiffs' Common Stock would constitute a windfall to Plaintiffs is a problem of their own making. Defendants could have pursued a means other than a 251(h) tender offer to complete their acquisition of Paya and, thereby, could have avoided the requirements of the Best Price Rule and the duty to pay Plaintiffs for their shares.

16

They could have also not held the Offer open to Plaintiff's Company Common Stock and argued that doing so does not violate the All Holders Rule. But having chosen to make the Offer open to "any and all of the issued and outstanding shares of common stock" (JA211 (D.I. 1-4 at 1)), Defendants must abide by the Rule's requirements. A tender offer is legal vote buying and, having offered to pay $9.75 per share for the equivalent of votes in favor of the merger, Defendants' must now pay Plaintiffs for their tendered, *i.e.*, voted, shares.

## IV.   Any Forfeiture After the Expiration of the Tender Offer is Irrelevant to Defendants' Obligation to Pay for All Tendered Shares

Defendants assert that Plaintiffs forfeited their Company Common Stock "before any shares were accepted in the tender offer," excusing their failure to pay for Plaintiffs' tenders. (Opp. at 15.) As explained in Plaintiffs' opening brief, however, under the plain language of the Best Price Rule, Defendants' obligation to pay for Plaintiffs' tendered shares accrued at the time of tender. (Br. at 22-24.) The Best Price Rule explicitly requires that an offeror pay the highest price paid for "securities tendered" in the tender offer; the Best Price Rule does not include any other obligations to trigger a buyer's obligation to pay. 17 C.F.R. § 240.14d-10(a)(2). Indeed, Defendants do not dispute that the Best Price Rule's payment obligation is triggered by the tender of shares, rather than Defendants' acceptance of them. In addition, in the Offer, Defendants agreed to "***irrevocably accept for payment*** all shares . . . validly tendered and not validly withdrawn [***prior*** to] the

Offer Expiration Time," meaning Defendants were required to pay for tendered shares, not just those they later chose to accept after the Offer expired. (JA503 (D.I. 21-1 § 2.1(d)).) There is no dispute that Plaintiffs tendered their shares prior to the Offer Expiration Time, and this triggered Defendants' obligation to pay for those tendered shares.

Defendants cannot demonstrate that Plaintiffs forfeited their Company Common Stock prior to the expiration of the tender offer. First, Defendants included Plaintiffs' shares in the count of common shares in existence when the tender offer expired. (JA571 (D.I. 21-3 at 1).) Second, the tender offer rules permit tendering stockholders to withdraw their tenders until the offer expires. As a result, it was impossible for Defendants to know they could acquire Paya, leading to a Change in Control, until *after* the tender offer expired. Third, the District Court agreed and held that "Plaintiffs did not forfeit their Earnout Shares until *after* Offer Expiration Time." (D.I. 28 at 11 (emphasis in original).)

Any later forfeiture is irrelevant because Defendants became obligated to pay once Plaintiffs tendered their shares. Accordingly, it is of no significance whether the Change in Control that triggered forfeiture occurred prior to the closing of the Merger, as Defendants argue, or at some later time. But to be clear, the District Court held only that the Change of Control occurred at the time of "Defendants completed their acquisition of Paya," (JA010 (D.I. 28 at 9)), which did not happen

18

until after Plaintiffs tendered their shares and Defendants became obligated to irrevocably accept them for payment.

## V.    The Best Price Rule Is Valid and Provides a Private Right of Action

In a final "Hail Mary," Defendants take the brazen position that the Best Price Rule is an invalid exercise of the SEC's rule-making authority, and that it does not invoke a private right of action.   (Opp. at 24-30.)   As a preliminary matter, Defendants waived this argument below by only advancing it in footnotes.  *See* D.I. 12 at 14 n.6; D.I. 22 at 16 n.13; *see also Facta Health Inc. v. Pharmadent LLC*, No. 23-2224, 2024 WL 4345299, at *7 (3d Cir. Sept. 30, 2024) (argument forfeited where made in a "passing" reference "in its briefing before the District Court"); *G2A.COM Sp. z.o.o. (Ltd.) v. U.S.*, 789 F. App'x 296, 301 (3d Cir. 2019) (argument waived on appeal where party on "gestured toward" it "in a footnote"); *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 262 (3d Cir. 2009) ("A fleeting reference or vague allusion to an issue will not suffice to preserve it for appeal[.]"); *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) ("[A]rguments raised in passing . . . but not squarely argued, are considered waived.").

In any event, Defendants' arguments are meritless.  Congress authorized the SEC to promulgate the Best Price Rule in passing the Williams Act, which explicitly includes a statutory equivalent to the Best Price Rule in its provisions and grants the

SEC the broad authority to promulgate rules to enforce the statute. Courts have long held that the Best Price Rule gives rise to a private right of action because the Rule is meant to protect stockholders and implying a private right of action furthers the purposes of the Williams Act, and the historical context in which Congress passed the Williams Act suggests that Congress intended for a private right of action.

### A. Congress Authorized the SEC to Promulgate the Best Price Rule in the Williams Act

Defendants are wrong that the SEC's promulgation of the Best Price Rule was beyond the scope of the authority granted to the SEC under the Williams Act. As the Supreme Court recently instructed, "[w]hen the best reading of a statute is that it delegates discretionary authority to an agency, the role of the reviewing court under the [Administrative Procedure Act] is, as always, to independently interpret the statute and effectuate the will of Congress subject to constitutional limits." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 395 (2024). In the Williams Act, Congress plainly expressed its will in the statute itself for the SEC to implement the Best Price Rule and granted the SEC the authority to promulgate it.

Defendants recite the Williams Act and its legislative history at length but, in a glaring omission, fail to note that the Williams Act itself includes a statutory equivalent to the SEC's Best Price Rule in Section 14(d)(7):

> Where any person varies the terms of a tender offer or request or invitation for tenders before the expiration thereof by increasing the consideration offered to holders of such securities, such person shall

pay the increased consideration to each security holder whose securities are taken up and paid for pursuant to the tender offer or request or invitation for tenders whether or not such securities have been taken up by such person before the variation of the tender offer or request or invitation.

15 U.S.C. § 78n(d)(7).

Nor do Defendants cite the Williams Act's broad grant of authority to the SEC to enforce the Act's provisions governing tender offers:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, *in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors*, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title.

15 U.S.C. § 78n(a)(1).

Together, Section 14(d)(7) and Section 14(a)(1) indicate that (i) Congress intended the Best Price Rule to preclude buyers from paying tendering shareholders different consideration for their shares, and (ii) Congress authorized the SEC to promulgate rules governing tender offers to enforce the Williams Act's purposes. The SEC's Best Price Rule plainly enforces the purpose of the Williams Act's Section 14(d)(7) and, thus, was within the SEC's authority to promulgate.

Even accepting Defendants' argument that the Williams Act only "authorize[s] the SEC to ensure adequate *disclosure* surrounding tender offers," the Supreme Court long ago acknowledged that Section 14(d)(7) of the Williams Act *is*

*meant to ensure adequate disclosure*.   Specifically, in *Schreiber v. Burlington Northern, Inc.*, 472 U.S. 1 (1985), the Supreme Court stated that provisions of Section 14(d) "require or prohibit certain acts *so that investors will possess additional time within which to take advantage of the disclosed information*," including Section 14(d)'s "substantive requirement[]" of "the payment of the same price to all those whose shares are purchased." *Id.* at 9 & n.9.   Indeed, this Court's opinion in *Polaroid Corp. v. Disney*, noted that *Schreiber* characterized "section 14(d)(7), which mandates the payment of the same price to all those whose shares are purchased, as 'requir[ing] or prohibit[ing] certain acts so that investors will possess additional time within which to take advantage of the disclosed information.'" 862 F.2d 987, 994 (3d Cir. 1988) (quoting *Schreiber*, 472 U.S. at 9). The SEC's Best Price Rule likewise is aimed at ensuring adequate disclosure, just like Section 14(d)(7) of the Williams Act, and is a valid exercise of the SEC's rule-making authority granted by Congress under the Williams Act.

The Supreme Court's decision in *Loper* in no way undermines the SEC's authority under the Williams Act.   Under *Loper*'s simple and controlling guidance, the Court must simply ask, "Does the statute authorize the challenged agency action?"   603 U.S. at 406 (2024).   Here, there can be no question that the Williams Act, with its own statutory equivalent to the Best Price Rule and broad grant of

authority to the SEC to regulate tender offers, authorized the SEC to validly promulgate the Best Price Rule.[7]

### B. Long-Standing Caselaw Establishes that the Best Price Rule Provides for a Private Right of Action

Defendants invite this Court to set aside over thirty years of precedent and become the only Court of Appeals to find that the Best Price Rule does not provide for a private right of action. Defendants cite no case that has held otherwise; rather, numerous courts have held that a private right of action exists. For example, both the Second and Ninth Circuit Courts of Appeals have held that Section 14(d)(7) of the Williams Act, the statutory equivalent of the SEC's Best Price Rule, specifically provides for a private right of action. *See Field v. Trump*, 850 F.2d 938, 946 (2d Cir. 1988); *Epstein*, 50 F.3d at 652. And this Court held, in *Polaroid*, that the All Holders Rule provides a private right of action based on the same reasoning that other Courts of Appeals applied in finding that Section 14(d)(7) creates a private right of action. *See Polaroid*, 862 F.2d at 996.

Defendants are wrong that more-recent Supreme Court precedent should alter the analysis employed in *Polaroid*. Rather, the Supreme Court, in precedent cited by Defendants, has reiterated the same standard for determining whether a regulation

---

[7] Notably, in finding that the All Holders Rule, too, was a valid exercise of the SEC's authority under the Williams Act, this Court noted that "deference due the agency's interpretation of its enabling statute" only "buttressed" the Court's independent determination. *Polaroid*, 862 F.2d at 995.

provides for a private action as that deployed by this Court in *Polaroid*. *Compare Ziglar v. Abbasi*, 582 U.S. 120, 133 (2017) ("the judicial task [is] limited solely to determining whether Congress intended to create the private right of action asserted"); *with Polaroid*, 862 F.2d at 995 ("In determining whether a statute creates a private remedy despite the absence of an express private remedy provision, the key to the inquiry is the intent of the Legislature.").

Consistent with this standard, the *Polaroid* Court determined that Congress intended to create a private right of action based on several factors, including: (i) "[b]ecause the class sought to be protected by the Williams Act are the shareholders of the target corporation, it would also be consistent with the underlying purposes of the legislative scheme to imply a private remedy for these shareholders," *id.* at 996 (citing *Piper v. Chris–Craft Indus., Inc.*, 430 U.S. 1, 39 (1977)) (cleaned-up), and (ii) "the enforcement of [Section 14(d) of the Williams Act] through a private right of action . . . further[s] the purposes of the Williams Act," including by "compensate[ing] injured shareholders." *Id.* at 997.

In addition, the Court reasoned that the historical context in which Congress passed the Williams Act—including the "judicial construction of Rule 10b-5" to imply a private right of action, and the Supreme Court's then-recent decision in *J.I. Case Co. v. Borak*, 377 U.S. 426 (1964), which implied a private right of action under Section 14(a) of the Exchange Act—further indicated that "Congress passed

24

the Williams Act [in 1968] with an understanding that courts would construe the Act as creating private remedies that would enforce the provisions of the Act effectively." *Polaroid*, 862 F.2d at 996. Defendants thus misread *Polaroid*'s reliance on *Borak*—the *Polaroid* Court merely referenced *Borak* as part of the legal context in which Congress passed the Williams Act; the Court did not rely on its substantive reasoning to imply a private right of action.

Because Defendants do not identify any change in the standard by which this Court should determine whether the Williams Act gives rise to a private right of action, this Court should refuse the invitation to overturn *Polaroid*.

## <u>CONCLUSION</u>

For the foregoing reasons and those set forth in Plaintiff's opening brief, Plaintiffs respectfully request that this Court vacate the District Court's determination that Plaintiffs did not sufficiently state a claim under the Best Price Rule and remand this action to the District Court with instructions that the Court reconsider Plaintiffs' Motion for Summary Judgment consistent with this Court's decision.

Dated:  May 12, 2025

Javier Bleichmar
BLEICHMAR FONTI & AULD LLP
300 Park Ave, Suite 1301
New York, New York 10022
Tel: (212) 789-1340
jbleichmar@bfalaw.com

/s/ Derrick B. Farrell
Derrick B. Farrell
BLEICHMAR FONTI & AULD LLP
3411 Silverside Rd.
Baynard Building, Ste. 104
Wilmington, DE 19810
Tel: (302) 499-2158
dfarrell@bfalaw.com

*Counsel for Appellants*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that:

1. I, Derrick B. Farrell, Esquire, am a member of the bar of the United States Court of Appeals for the Third Circuit.

2. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 6,264 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

3. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman size 14 font.

4. The text of the electronic version of this brief filed on ECF is identical to the text of the paper copies filed with the Court.

5. The electronic version of this brief filed on ECF was virus checked using Webroot Endpoint Protection version CE 25.1, and no virus was detected.

Dated: May 12, 2025                    */s/ Derrick B. Farrell*
                                       Derrick B. Farrell

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on May 12, 2025, I electronically filed the foregoing with the Clerk of the United States Court of Appeals for the Third Circuit by using the appellate CM/ECF system.  Participants in the case are registered CM/ECF users and will be served by the appellate CM/ECF system.


*/s/ Derrick B. Farrell*
Derrick B. Farrell